LISKA *v.* LODGE.[1]

PRINCIPAL AND AGENT—UNAUTHORIZED ACT—ESTOPPEL.

An owner of land who signs a contract for its sale, brought
to him by his agent, without reading it, is bound by a pro-
vision therein authorizing the purchaser to pay in merchan-
dise, although the agent had no authority to insert the same.

Appeal from Wayne; Carpenter, J. Submitted April
27, 1897. Decided May 11, 1897.

Bill by Frank F. Liska and another against Frank T.
Lodge for the specific performance of a land contract.
From a decree for complainants, defendant appeals.
Affirmed.

Defendant owned the legal title to a subdivision in the
village of Highland Park, Wayne county, which had been
platted, and consisted of 248 lots. The property was in
fact owned by 14 persons, each of whom owned an un-
divided one-fourteenth interest. Among them were Shel-
ley & Simpson, a firm of real-estate agents. The lots
were placed in the hands of this firm, as agents, for sale.
Contracts were printed, leaving blank only the dates,
names of the purchasers, description of the property, and
price. Shelley & Simpson negotiated a sale of one lot to
the complainants for the price of $900. Upon the margin
of this contract, in typewriting, was the following:

"The first party hereunto hereby agrees that he will
take the amount due hereunder in merchandise, and that
the amount so taken will aggregate at least $200 per year
from date hereof. Attached to, and forming a part of,
this contract."

Complainants were merchant tailors, and, before the
failure of Shelley & Simpson, had made clothes for them

[1] Rehearing denied June 18, 1897.

and persons in their employ amounting to about $600. Shelley & Simpson had entered these payments upon their books as cash. Shelley & Simpson failed, and at the time of their failure were indebted to the defendant, or to the syndicate represented by him, $9,500. Upon learning of the failure, complainants called upon defendant to perform his contract. The defendant refused, alleging that he knew nothing of this provision of the contract, that Shelley & Simpson had no authority to make it, and that it was not binding upon him. Complainants thereupon filed this bill for the specific performance of the contract, having tendered in cash the balance due.

*Charles C. Stewart*, for complainants.

*Edward Minock* and *Frank T. Lodge* (*in pro. per.*), for defendant.

GRANT, J. (*after stating the facts*). This contract was signed by the defendant himself, and not by Shelley & Simpson as agents. It appears that they had no authority to sign contracts. When a sale was agreed upon, the contracts were taken to the defendant for execution. Defendant once or twice signed contracts in blank, leaving them to be filled out by Shelley & Simpson, upon the terms agreed upon. But this contract was evidently not one of those, if the testimony of complainants is true. The defendant, in his argument, treated the relation of Shelley & Simpson to this transaction as purely an agency, and as if they were authorized to sign contracts in the name of their principal. If this were so, and Shelley & Simpson had executed it as agents, the defendant would clearly be right. Shelley & Simpson had no authority to make such a contract, and the provision in question was of so unusual a character that it would not come within the scope of an agency to sell lands; and in such case the purchaser would act at his own risk, it being his legal duty to inquire into the

authority of the agent. But that rule does not apply here. If this contract was signed by the defendant with this provision written in, it is binding upon him. Upon the determination of this question must depend the result reached. There was no finding by the learned circuit judge, and we are unable to determine upon what basis he made his decree. Complainants testified that Shelley & Simpson brought them an unsigned contract without this provision in; that they declined to sign it; that Shelley & Simpson took it away, and, a day or two after, brought another contract, in duplicate, with this provision written upon the margin; that defendant's signature was not then attached; that they (complainants) then signed the two; that they were taken away, and one of them was subsequently returned to complainants by Shelley & Simpson, with the defendant's signature attached. His signature was also attached to the duplicate, and retained among the papers of the syndicate in the office of Shelley & Simpson. The defendant, on his direct examination, testified that he did not sign this contract with this rider upon it, and that he never knew of the existence of such a contract until complainants called his attention to it after the failure of Shelley & Simpson. On his cross-examination the following question was asked:

"Then, as I understand, you emphatically deny that you signed that contract after it had been filled out? "*A.* Yes; as far as I can possibly recollect now."

Mr. Lodge and his associates had the utmost confidence in the honesty and integrity of Shelley & Simpson. We think it far more probable that this contract was signed by the defendant without reading it, than that the complainants are mistaken in saying that the contract was signed by them before it was signed by the defendant and delivered to them. If Mr. Lodge signed it with this provision in it, it is, of course, binding upon him, whether he read it or not. It was his duty to examine the contract;

to know what he signed, and complainants cannot be made to suffer for this neglect upon his part.

It follows that this decree must be affirmed, with costs.

The other Justices concurred.